## Case No. 9,870.

### In re MOSES.

[See 1 Fed. 845.]

## Case No. 9,871.

### MOSES et al. v. BOYD et al.

[5 Blatchf. 357.] [1]

Circuit Court, S. D. New York. Nov. 28, 1866. [2]

GUARANTY — DAMAGE TO OTHER CARGO—CONDITION OF SHIP—LIABILITY.

1. Where a charterer of a vessel agrees with her master. on behalf of the vessel. to pay any damages that the vessel may be subject to. arising from lard in casks being stowed between decks and running on other cargo. the vessel is, notwithstanding this agreement. liable for damage caused to cargo in the lower hold by the leakage of lard from the casks and through the deck, if the deck is not well and sufficiently caulked.

2. Where such an agreement was made in view of the fact that the lard in the casks, while they were being stowed. was found to be leaking therefrom, and to be in an almost liquid state, and it appeared that the deck was well and sufficiently caulked: Held, that the vessel was not responsible for damage caused to cargo in the lower hold by the leakage of the lard from the casks and through the deck.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in personam, filed in the district court. to recover a balance of $1,779.-27 alleged to be due on a charter party. made July 24th, 1862. by the libellants [Oliver Moses, Charles Owen. Frank O. Moore. G. C. Moses, and Albert Otis]. as owners of the ship Robert Cushman, chartering her to the respondents [Robert R. Boyd, John J. Boyd, and Edward Hincken] for a voyage from New York to Havre, in France. The district court dismissed the libel, and the libellants appealed to this court.

Edward H. Owen and Stephen P. Nash, for libellants.

Erastus C. Benedict, for respondents.

NELSON, Circuit Justice. The vessel sailed from New York about the 17th of August, 1862, and arrived at Havre on the 23d of September following. The cargo consisted chiefly of wheat, lard, and tallow. The wheat in bulk, and also some in bags, was stowed in the hold. A portion of the lard was stowed between decks. The dispute in the case between the parties arises out of damage occasioned to the wheat in the hold by the leaking of the lard between decks, with which the charterers were charged in Havre and which they paid. They now claim the right to retain the amount out of the freight money, insisting that the vessel is responsible for the loss. Some difficulty seems to have existed, in the court below, in reaching this question, on the pleadings; but, whatever may have been the merits of the difficulty there, it has been remedied by an amendment of the pleadings in this court, and the question is fairly presented. This lard between decks, when delivered at the ship to be taken on board, was leaking badly from the casks, and most of it seemed to be apparently in an almost liquid state. The weather was excessively hot, so that the hands engaged in the stowage had to be frequently relieved, and, on some days, to lie by in the middle of the day. The stevedore who had charge of the loading refused to take the responsibility of placing the leaking casks between decks, from the danger of damaging the wheat below in the hold, and required the direction of the master, who also objected to taking in the cargo, and made his objections known to the charterers. Thereupon, they gave him, in due form. an agreement, before he would assent to the stowage, "to pay any damages that yourself (master) or the ship may be subject to, on the discharge of the cargo at Havre. the said damage arising from the lard being stowed between decks and running on the other cargo either in the between decks or lower hold." This I regard as a modification of the charter party. and it has been so treated in the amended libel, and removes the technical embarrassment of the case in the court below.

It is admitted that the damage to the cargo in question arose out of the leakage of the lard casks. Some were entirely empty, and over three hundred were partially empty, when discharged at Havre; and the lard had dripped through the seams of the deck to the cargo below. heated and damaged the wheat, and spread over the between deck.

It is claimed. on the part of the respondents. that the between deck was not well and sufficiently caulked, and that, if it had been, notwithstanding the leaky condition of the casks, the lard would not have worked its way to the lower hold. and. hence, that the 'ship should be held responsible for the damage. I agree. that, if this aspect of the case can be maintained. upon the proofs, the decree should be for the respondents, because the guarantee should not be construed as exonerating the ship from being, in all respects, in a seaworthy condition to carry this description of cargo. I have, consequently, looked into the proofs on this point, and, though there is some conflict of opinion among the witnesses, I am inclined to think

[1] [Reported by Hon. Samuel Blatchford, District Judge. and here reprinted by permission.]
[2] [Affirmed in 7 Wall. (74 U. S.) 316.]

that the weight of the testimony does not sustain the allegation of the respondents. The witnesses who speak of the practice or usage of carrying leaking casks of lard between decks without danger to the cargo below, if the deck is properly caulked, generally qualify the remark as it respects lard in a liquid state in the casks, which, as is apparent from the proofs in this case, was the condition of a considerable portion of this lard when stowed; and, as the weather continued hot throughout nearly the whole of the voyage, this state of the lard must have increased rather than diminished. Indeed, the state of the casks when discharged, and of the between decks, goes far to confirm the evidence of the unusual leaking condition of the casks when put on board of the vessel, which led the stevedore and the master to object to them as not fit to be shipped; and the fact that the charterers, instead of insisting upon their right under the charter, chose to modify it, as respected the particular article, leaves an implication of its unfitness.

Some question was made upon a clause in the charter party stipulating that the vessel should be consigned to the charterers' friends in Havre, and under which she was consigned to the house of J. Barb & Co. This house received the bills of lading and collected the freight, and paid over to the master the amount due, excepting the balance in dispute. They obviously regarded themselves as acting in the interest, and for the benefit, of the charterers; and I cannot agree that the payment by them of the damages at Havre was a payment as agents of the ship, so as to conclude the owners. They dealt with the freight moneys not only as the friends, but as the agents, of the charterers, as is apparent from the accounts between the two houses. I think that the court below erred, and that the decree should be reversed, and a decree be entered for the libellants, for such balance.

[On an appeal by the charterers to the supreme court, the decree of this court was affirmed. 7 Wall. (74 U. S.) 316.]